# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| **JASON L. ENGLEMAN** | : | **Case No:**   3:21-cv-710-DJH |
| 19516 Dow Knob Road | : | |
| Borden, IN 47106 | : | **Judge:**   David J. Hale |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| **BROWN-FORMAN CORPORATION** | : | |
| 850 Dixie Highway | : | |
| Louisville, KY 40210 | : | |
| | : | |
| Defendant. | : | |

---

## COMPLAINT WITH JURY DEMAND

---

Jason L. Engleman states the following for his Complaint against Brown-Forman Corporation:

### INTRODUCTION

1.      This action arose after Defendant Brown-Forman Corporation engaged in discriminatory employment practices against a loyal employee who served the company for over 14 years without incident until he was required to undergo surgery, requested reasonable disability accommodations, and requested FMLA leave. Defendant fosters and environment that discriminates against employees who exercise their rights under the FMLA and ADA and retaliates against employees who request reasonable accommodations for disabilities. When Mr. Engleman stood up to Defendant's blatant discriminatory practices and a culture of discrimination, Defendant unlawfully terminated him.

## PARTIES

2.      Plaintiff Jason Engleman ("Mr. Engleman" or "Plaintiff") is a resident of Indiana. Plaintiff's claims arose out of an employment relationship with Brown-Forman Corporation in Louisville, Kentucky.

3.      Brown-Forman Corporation ("Defendant") is a corporation registered with the Kentucky Secretary of State doing business in Jefferson County, Kentucky. Defendant employs over 1,000 employees and engages in interstate commerce.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Mr. Engleman asserts claims arising under the Family and Medical Leave Act ("FMLA") and the Americans With Disabilities Act ("ADA").

5.      Mr. Engleman also states claims under the laws of the Commonwealth of Kentucky. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

6.      Venue is proper in this Court because the transactions and occurrences and injuries occurred in Jefferson County, Kentucky.

7.      Mr. Engleman timely made a claim with the Equal Employment Opportunity Commission and received a right to sue letter.

8.      Mr. Engleman has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## BACKGROUND FACTS

9.      Mr. Engleman diligently and competently worked for Defendant for over 14 years.

10.     Mr. Engleman started working as a shipping operator for Defendant in 2006.

11.     Defendant quickly realized Mr. Engelman's potential and promoted him to a maintenance mechanic.

12.     Mr. Engleman was qualified for his position and was able to perform all essential job functions.

13.     Mr. Engleman has his associates degree in industrial maintenance and has multiple industry licenses such as his HVAC and ASE licenses.

14.     Thus, Mr. Engleman was overly qualified for his position and would often receive accolades and praises from his coworkers and supervisors.

15.     Defendant habitually provided Mr. Engleman high performance reviews.

16.     Mr. Engleman became ill and after weeks of treatment and procedures, Doctors recommended Mr. Engleman undergo surgery to implant a defibrillator.

17.     Mr. Engleman used FMLA leave and short-term disability to undergo the surgery and the subsequent rehabilitation after the surgery.

18.     Fortunately, the surgery was successful, and Mr. Engleman was ready, willing, and able to return to work.

19.     Yet, Defendant refused to allow Mr. Engleman to return to work and insisted that he was unable to perform his job duties because of his disabilities or perceived disabilities.

20.     Defendant insisted that it was too dangerous for Mr. Engleman to return to work because Defendant (incorrectly) believed that the defibrillator would receive interference with the equipment Defendant used.

21.     Defendant even hired an expert to test the facility for potential interference.

22.     This "expert" opined it was not safe for Mr. Engleman to return to work.

23.     Yet, this expert was basing his findings on significantly outdated data and a different device than Mr. Engleman had implanted.

24.     Mr. Engleman had the device manufacture run tests at Defendant's facility.

25.     The device manufacturer opined that there was unequivocally no risk of interference with the device and that Mr. Engleman could work at the facility without risks of mechanical interference with the machines and equipment at Defendant's facility.

26.     Eventually, after looking at the new (more accurate) tests, Defendant allowed Mr. Engleman to return to work.

27.     When Mr. Engleman returned to work, he was met with immediate hostility, and he was treated differently than before his FMLA leave.

28.     Mr. Engleman continued to work for months and was still performing above expectations.

29.     After speaking with his doctor, Mr. Engleman requested disability accommodations.

30.     Per his doctor's recommendations, Mr. Engleman requested not to work longer than 8.5 hours per day and a maximum of 6 days a week.

31.     This accommodation was reasonable and caused no undue burden on Defendant.

32.     Defendant employed enough employees to cover any shortages in labor due to Mr. Engleman's disability accommodation request.

33.     Defendant denied this disability accommodation request.

34.     Defendant's HR manager informed Mr. Engleman that Defendant does not provide disability accommodations.

35.     Defendant's blanket statement that it does not provide disability accommodations, thwarted Mr. Engleman's ability and wish to request disability accommodations in the future.

36.     After Defendant denied Mr. Engelman's request for accommodations, Mr. Engleman again was forced to take FMLA leave.

37.     Mr. Engleman was suffering from debilitating conditions such as extreme blurry vision.

38.     Doctors prescribed Mr. Engleman medicine for this newly discovered condition that was affecting Mr. Engleman severely.

39.     Mr. Engleman was unable to perform multiple simple daily tasks because of the condition.

40.     Eventually, after his medicine titrated, Mr. Engleman returned to work.

41.     Mr. Engleman was qualified for FMLA leave and had FMLA leave time remaining upon his return to work.

42.     When Mr. Engleman returned from FMLA leave, he was again met with extreme hostility.

43.     Defendant treated Mr. Engleman differently because he took FMLA leave and because he requested disability accommodations.

44.     Defendant criticized and reprimanded Mr. Engleman for things other non-disabled employees were not criticized and reprimanded for.

45.     Yet, Mr. Engleman was still performing above Defendant's expectations.

46.     Mr. Engleman felt like an outsider when he returned to work from FMLA leave, and Defendant's managers would make constant derogatory comments regarding Mr. Engleman's need for FMLA leave.

47.     Indeed, Defendant made constant derogatory comments when Mr. Engleman took intermittent FMLA leave.

48.     Defendant and its managers would constantly harass Mr. Engleman.

49.     For example, Defendant and its managers would inform other employees that Mr. Engleman was not going to be at work (when he was taking FMLA leave) because "his heart kicked out again."

50.     The comments regarding Mr. Engelman's disability were severe and pervasive.

51.     Mr. Engleman suffered weekly comments regarding his disability and his need to occasionally take intermittent FMLA leave.

52.     Mr. Engleman complained to HR regarding these constant harassing comments.

53.     Mr. Engleman informed Defendant's HR that his managers and HR was discriminating against him because he used FMLA and because he had a disability.

54.     In fact, Mr. Engleman made several complaints of disability discrimination.

55.     Defendant immediately denied Mr. Engelman's complaints of harassment and failed to conduct any meaningful investigation.

56.     Instead, after Defendant received complaints of harassment, Defendant ramped up its harassing comments to further ostracize Mr. Engelman.

57.     Mr. Engleman again needed to take a short FMLA leave.

58.     Mr. Engleman had FMLA leave time remaining.

59.     Mr. Engleman was qualified for FMLA leave.

60.     Mr. Engleman complied with all the FMLA's reporting and documentation processes.

61.     While on FMLA leave, Defendant interfered with Mr. Engleman's FMLA rights and terminated him while he still had days available on his FMLA leave.

62.     Defendant and its managers did not like that Mr. Engleman took FMLA leave.

63.     In fact, one of Mr. Engleman's managers asked HR "how does [Mr. Engleman] get to take all this time off . . . [and] how are we not terminating him for this time off."

64.     Defendant's reason for terminating Mr. Engleman was false.

65.     Defendant treated Mr. Engleman differently than other non-disabled employees and employees who did not take FMLA leave.

66.     Mr. Engleman suffered damages and will continue to suffer damages in the future because of Defendants actions.

## CLAIMS

### COUNT I
### FMLA Interference Under 29 U.S.C. §2615

67.     Mr. Engleman restates and incorporates all paragraphs.

68.     Mr. Engleman was qualified for FMLA leave and Defendant is an employer covered by the FMLA's regulations.

69.     Mr. Engleman suffered from dangerous heart conditions and other disabilities.

70.     Because of his dangerous heart conditions and other disabilities. Mr. Engleman was temporarily unable to perform the functions of his job.

71.     Mr. Engleman's health conditions were serious and required time to regulate under his doctor's supervision.

7

72.     In addition, FMLA leave was needed because Mr. Engleman needed to perform follow up doctors' visits and additional treatments to regulate and titrate his new medicine.

73.     Mr. Engleman informed Defendant of this unforeseeable illness and requested FMLA leave.

74.     Mr. Engleman provided Defendant with a note from his doctor verifying his need to take FMLA leave.

75.     Mr. Engleman started FMLA leave but Defendant did not allow him to finish it.

76.     Defendant and its managers did not like that Mr. Engleman took FMLA leave.

77.     In fact, during a meeting, one of Mr. Engleman's managers asked HR how "does [Mr. Engleman] get to take all this time off . . . [and] how are we not terminating him for this time off."

78.     When Defendant terminated him, Mr. Engleman still had time remaining on his FMLA leave.

79.     Thus, Defendant interfered with and restrained Mr. Engleman's attempt to exercise FMLA leave.

80.     Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Engleman.

81.     Mr. Engleman suffered damages and will continue to suffer damages in the future because of Defendant's interference with his rights to take FMLA leave.

82.     Mr. Engleman is entitled to all damages and injunctive relief permissible under the FMLA.

## COUNT II
## FMLA Retaliation and Discrimination under 29 U.S.C. §§2614-15

83.     Mr. Engleman restates and incorporates all paragraphs.

84.     Mr. Engleman requested FMLA leave for dangerous heart conditions and other disabilities.

85.     Mr. Engleman notified Defendant of the serious health condition that made him temporarily unable to perform his essential job functions.

86.     Mr. Engleman was qualified for FMLA leave.

87.     Defendant retaliated against Mr. Engleman for requesting and taking FMLA leave.

88.     Defendant and its managers did not like that Mr. Engleman took FMLA leave.

89.     In fact, during a meeting, one of Mr. Engleman's managers asked HR how "does [Mr. Engleman] get to take all this time off . . . [and] how are we not terminating him for this time off."

90.     Every time Mr. Engleman returned from intermittent FMLA leave, he was met with extreme hostility.

91.     For example, Defendant criticized and reprimanded Mr. Engleman for things other employees (who did not take FMLA leave) were not being criticized and reprimanded for.

92.     Defendant fosters and environment that highly frowns upon employees taking FMLA leave.

93.     Defendant terminated Mr. Engleman while on FMLA leave.

94.     Defendant terminated Mr. Engleman because he exercised his rights under the FMLA.

95.     Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Engleman.

96.     Mr. Engleman suffered damages and will continue to suffer damages because of Defendant's retaliation and discrimination.

97.     Mr. Engleman is entitled to all damages and injunctive relief permissible under the FMLA.

## COUNT III
### Disability Discrimination
### Under the Americans with Disabilities Act 42 U.S.C. § 12101 et seq

98.     Mr. Engleman restates and incorporates all paragraphs.

99.     The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

100.     Because Mr. Engleman's dangerous heart conditions and other disabilities substantially limits at least one of his major life activities, he is an individual with a disability under the ADA.

101.     Mr. Engleman was fully qualified for his position, and he could perform all the essential functions of the position.

102.     Defendant is a covered employer to which the ADA applies.

103.     Defendant terminated Mr. Engleman from his employment solely because Mr. Engleman had a disability or because Defendant perceived or regarded Mr. Engleman as having a disability.

104.     Mr. Engleman was ready, willing, and able to perform his job duties when he returned to work from FMLA leave.

105.    Defendant treated Mr. Engleman differently because he requested disability accommodations and because he was perceived as having a disability making him unable to perform his job duties.

106.    Defendant criticized and reprimanded Mr. Engleman for things other non-disabled employees were not criticized and reprimanded for.

107.    Defendant's managers would make constant derogatory comments regarding Mr. Engleman's disability.

108.    For example, Defendant and its managers would inform other employees that Mr. Engleman was not going to be at work because "his heart kicked out again."

109.    Defendant made constant health related jokes indicating Mr. Engleman was not healthy enough to perform his job duties.

110.    This was not true.

111.    The comments regarding Mr. Engelman's disability were severe and pervasive.

112.    Defendant made no individualized assessment to determine whether Mr. Engleman could perform his essential job functions or whether a reasonable accommodation would enable him to be employed.

113.    Defendant refused to allow Mr. Engelman disability accommodations.

114.    Defendant's termination of Mr. Engleman based on his disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether Mr. Engleman could be employed or whether a reasonable accommodation would enable his to be employed by Defendant violated the ADA.

115.    As a result of Defendant's actions, Mr. Engleman has suffered and will continue to suffer both economic and non-economic damages.

116.    Defendant terminated Mr. Engleman because he had a disability.

117.    Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Engleman.

118.    Mr. Engleman is entitled to all damages and injunctive relief permissible under the ADA.

## COUNT IV
### Retaliation Under the Americans with Disabilities Act

119.    Mr. Engleman restates and incorporates all paragraphs.

120.    The ADA provides: "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

121.    Defendant terminated Mr. Engleman because he requested accommodations to take off work to allow time for his dangerous heart conditions and other disabilities.

122.    Mr. Engleman suffered weekly comments regarding his disability.

123.    Mr. Engleman complained to HR regarding these constant harassing comments.

124.    Mr. Engleman made the complaints of ADA discrimination in good faith and he reasonably believed he had a disability.

125.    Mr. Engleman informed Defendant's HR that his managers and HR were discriminating against him because he used FMLA and because he had a disability.

126.    Defendant terminated Mr. Engleman within weeks of these complaints of harassment.

127.    In addition, Mr. Engleman assisted other employees with making ADA accommodation requests.

12

128.    Defendant's managers called Mr. Engleman a "jail house lawyer" for assisting other employees in the ADA accommodation process.

129.    Defendant's managers harassed and criticized Mr. Engleman for helping other employees apply for ADA accommodations.

130.    Defendant terminated Mr. Engleman in retaliation.

131.    Because of Defendant's retaliation, Mr. Engleman has suffered and will continue to suffer both economic and non-economic damages.

132.    Mr. Engleman is entitled to all damages and injunctive relief permissible under the ADA.

### COUNT V
### Disability Discrimination
### Under KRS §344 et seq

133.    Mr. Engleman restates and incorporates all paragraphs.

134.    Because Mr. Engleman's dangerous heart conditions and other disabilities substantially limits at least one of his major life activities, he is an individual with a disability under KRS 344.

135.    Mr. Engleman was fully qualified for his position, and he could perform all the essential functions of the position.

136.    Defendant is a covered employer to which KRS §344 applies.

137.    Defendant terminated Mr. Engleman from his employment solely because Mr. Engleman had a disability or because Defendant perceived or regarded Mr. Engleman as having a disability.

138.    Mr. Engleman was ready, willing, and able to perform his job duties when he returned to work from FMLA leave.

139.    Defendant treated Mr. Engleman differently because he requested disability accommodations and because he was perceived as having a disability making him unable to perform his job duties.

140.    Defendant criticized and reprimanded Mr. Engleman for things other non-disabled employees were not criticized and reprimanded for.

141.    Defendant's managers would make constant derogatory comments regarding Mr. Engleman's disability.

142.    For example, Defendant and its managers would inform other employees that Mr. Engleman was not going to be at work because "his heart kicked out again."

143.    Defendant made constant health related jokes indicating Mr. Engleman was not healthy enough to perform his job duties.

144.    This was not true.

145.    The comments regarding Mr. Engelman's disability were severe and pervasive.

146.    Defendant made no individualized assessment to determine whether Mr. Engleman could perform his essential job functions or whether a reasonable accommodation would enable him to be employed.

147.    Defendant refused to allow Mr. Engelman disability accommodations.

148.    Defendant's termination of Mr. Engleman based on his disability or perceived disability and Defendant's failure to make an individualized assessment to determine whether Mr. Engleman could be employed or whether a reasonable accommodation would enable his to be employed by Defendant violated KRS §344.

149.    As a result of Defendant's actions, Mr. Engleman has suffered and will continue to suffer both economic and non-economic damages.

150.    Defendant terminated Mr. Engleman because he had a disability.

151.    Defendant's actions were malicious and in a conscious disregard of the rights of Mr. Engleman.

152.    Mr. Engleman is entitled to all damages and injunctive relief permissible under KRS §344.

## COUNT VI
### Disability Discrimination
### Under KRS §344 et seq

153.    Mr. Engleman restates and incorporates all paragraphs.

154.    Defendant terminated Mr. Engleman because he requested accommodations to take off work to allow time for his dangerous heart conditions and other disabilities.

155.    Mr. Engleman suffered weekly comments regarding his disability.

156.    Mr. Engleman complained to HR regarding these constant harassing comments.

157.    Mr. Engleman made the complaints of disability discrimination in good faith and he reasonably believed he had a disability.

158.    Mr. Engleman informed Defendant's HR that his managers and HR was discriminating against him because he used FMLA and because he had a disability.

159.    Defendant terminated Mr. Engleman within weeks of these complaints of harassment.

160.    In addition, Mr. Engleman assisted other employees with making disability accommodation requests.

161.    Defendant's managers called Mr. Engleman a "jail house lawyer" for assisting other employees in the disability accommodation process.

162.    Defendant's managers harassed and criticized Mr. Engleman for helping other employees apply for disability accommodations.

163.    Defendant terminated Mr. Engleman in retaliation.

164.    Because of Defendant's retaliation, Mr. Engleman has suffered and will continue to suffer both economic and non-economic damages.

165.    Mr. Engleman is entitled to all damages and injunctive relief permissible under KRS §344.


**WHEREFORE**, Mr. Engleman respectfully requests that this Court find for him and award him the following:

    a.   Compensatory damages;

    b.   Reinstatement;

    c.   Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

    d.   Statutory damages;

    e.   Interest;

    f.   Punitive damages;

    g.   Attorney fees;

    h.   Costs;

    i.   Litigation expenses; and

    j.   All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (KY: 98791)
THOMPSON LEGAL LLC
10529 Timberwood Circle, Unit B
Louisville, Kentucky 40223
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

*/s/ Robert L. Thompson*
Robert L. Thompson